UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:                                                      CASE NO. 07-20281-BKC-PGH

GARY J. GROSS,                                              CHAPTER 7

        Debtor.

_____/

ANDREW MILTENBERG,
        Plaintiff,

Vs.

GARY J. GROSS,
        Defendant.                                ADV. CASE NO.

_____/

## COMPLAINT OBJECTING TO DISCHARGEABILITY PURSUANT TO 11 U.S.C. SECTION 523

COMES NOW Creditor, Andrew Miltenberg (hereinafter "Miltenberg" or "Creditor"), by and through the undersigned counsel, and sues Gary J. Gross (hereinafter "Debtor" or "Mr. Gross"), and would state as follows:

## PARTIES, VENUE AND JURISDICTION

1.      The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on November 21st, 2007.

2.      This is a Complaint Objecting to Dischargeability pursuant to 11 U.S.C. Section 523.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and 157 and 11 U.S.C. §523.

4.      This adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(I).

5.      Defendant, Mr. Gross, is a resident of Florida and is sui juris.

6.    Mr. Miltenberg is a creditor of the Debtor by virtue of a claim Mr. Miltenberg filed against Mr. Gross and Axiom Capital Management, Inc. ("Axiom") to recover out-of-pocket losses in excess of $425,000 suffered by Mr. Miltenberg from investments that were unsuitable for Mr. Miltenberg and were recommended by Mr. Gross and Axiom.

## GENERAL ALLEGATIONS

7.    In the Spring of 2005, Mr. Miltenberg met Mr. Gross who had been introduced to Mr. Miltenberg's mother by her best friend in Florida. Mr. Miltenberg agreed to meet with Mr. Gross at Mr. Gross's request to determine whether his mother should invest with the broker as her friend had.

8.    When Mr. Gross asked Mr. Miltenberg about his own investments, Mr. Miltenberg related the story of his previous financial problems. He told Mr. Gross how difficult it was for him to find time to manage his investments and that he was comfortable with the strategy his Raymond James broker utilized.

9.    Mr. Gross told Mr. Miltenberg that he had access to the types of investments that Raymond James did not.

10.    When Mr. Miltenberg again told Mr. Gross that he was satisfied with his investments at Raymond James, in particular the fact that his portfolio contained many well-known blue chip companies, and that it provided him with a comfortable mix of satisfactory returns along with the comfort of stability, Mr. Gross told him that he and his firm could provide the same level of comfort with substantially greater returns on the investment.

11.    Mr. Miltenberg asked Mr. Gross to explain precisely the types of investments he was speaking about and Mr. Gross told Mr. Miltenberg about the investments he had recommended to Mr. Miltenberg's mother's friend and others.

**Representations Made by Mr. Gross**

12.    Mr. Miltenberg said he was interested in learning more about the investments Mr. Gross had recommended to his mother's friend and others. Mr. Gross told Mr. Miltenberg that Axiom had a well-respected reputation in the marketplace, particularly with emerging companies and private placements of stock.

13.    Prior to his discussions with Mr. Gross, Mr. Miltenberg had no experience whatsoever in private stock transactions, either as an investor or as an attorney.

14.    Mr. Gross made the following representations to Mr. Miltenberg:

a.  Mr. Gross explained to Mr. Miltenberg that he would be able to give Mr. Miltenberg the opportunity to invest in what Mr. Gross called "investment banking" deals, with which Mr. Miltenberg was unfamiliar.

b.  He explained that the specific deals were "PIPE" deals, which were private placements of restricted stock in publicly traded companies that were generally used to tie the company over for a short period of time.

c.  Mr. Gross added that after that short period, the shares became tradable.

d.  Mr. Gross told Mr. Miltenberg he was offering this opportunity as a favor to Mr. Miltenberg because of Mr. Gross' relationship with his mother's friend and to prove to Mr. Miltenberg that he could be trusted, so that Mr. Miltenberg might recommend his law clients to Mr. Gross.

e.  Mr. Gross said Mr. Miltenberg should consider himself lucky to even be given such an opportunity because these types of deals usually go to much larger investment banks but that, because of its reputation and relationship with these companies, Axiom was allotted a small portion to provide to their retail

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

customers.

    f.    Mr. Gross also claimed on numerous occasions that he and Axiom had performed due diligence on the companies for months and that he had access to certain information that made these investments, in Mr. Gross' words "a slam dunk."

**Fiduciary Trust Placed by Mr. Milternberg in Mr. Gross**

15.    In response to Mr. Gross' representations, Mr. Miltenberg explained that the money in his Raymond James account was all the liquid assets he had and that it had taken years for him to build his savings after the difficult period surrounding his divorce.

16.    Mr. Miltenberg also told Mr. Gross that because of certain obligations he had, including continued child support payments and an upcoming wedding, Mr. Miltenberg needed to maintain a certain degree of liquidity with respect to his investments, and that they could not be tied-up for a long period of time.

17.    Mr. Miltenberg repeated his concerns to Mr. Gross on many occasions and Mr. Gross pacified him with various lies.

18.    Mr. Gross assured Mr. Miltenberg that these deals were generally ones with a fast turnaround from the time he invested in the transaction until the time he would be able to sell the stock.  Mr. Gross specifically represented to Mr. Miltenberg that the shares would be tradable somewhere between 60 to 90 days.

19.    Mr. Gross told Mr. Miltenberg that if there came a time when Mr. Miltenberg needed to get out of the investments prior to when the shares became freely tradable, Mr. Gross would be able to "cross" the shares with another investor, enabling Mr. Miltenberg to liquidate his investment at any time.

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

**Mr. Gross' Material Omissions Related to Private Stock Transactions**

20.    While giving Mr. Miltenberg a strong sales pitch, Mr. Gross failed to tell him

about critical aspects of these private stock transactions. For example:

a)    Mr. Gross failed to tell Mr. Miltenberg that these transactions were suitable for investors of adequate financial means who have <u>no need for liquidity</u> [unlike Mr. Miltenberg];

b)    Mr. Gross failed to tell Mr. Miltenberg that he might not be able to liquidate the investment in an <u>emergency</u> [despite Mr. Miltenberg's specific request that any investment retain such flexibility];

c)    Mr. Gross failed to tell Mr. Miltenberg that the ability to <u>transfer</u> the shares (including "crossing" the shares with another investor, as suggested by Mr. Gross) was extremely limited;

d)    Mr. Gross failed to tell Mr. Miltenberg that there was no guarantees as to when, if ever, the stock received in these transactions could be sold [which was also contrary to Mr. Gross' prior representations];

e)    Mr. Gross failed to tell Mr. Miltenberg that he could lose his entire investment;

f)    Mr. Gross failed to tell Mr. Miltenberg that private stock offerings like the ones suggested by Mr. Gross were usually used as a <u>last resort</u> by companies with few alternatives to raise revenue;

g)    Mr. Gross had knowledge of materially adverse financial information about the companies involved in the private placements that Mr. Gross failed to tell to Mr. Miltenberg prior to Mr. Miltenberg's investment in the private placements;

h)    Mr. Gross failed to tell Mr. Miltenberg that Axiom earned a substantially higher commission when their customers bought stock in a private transaction than when they purchased stock in the open markets; and

i)    Mr. Gross also failed to tell Mr. Miltenberg that he had been the subject of numerous complaints and arbitrations from former customers, many of whom claimed that Mr. Gross recommended highly unsuitable investments.

**The Private Placement and Vistula Stock Investments**

21.    Over the course of the next several months, Mr. Gross solicited and recommended

that Mr. Miltenberg purchase the following private placements (the "**Private Placements**") from

the proceeds of his stock and bond sales:

| Date of Investment | Security | Purchase Amount |
|---|---|---|
| June 14, 2005 | iCurie | $200,000 |
| July 26, 2005 | Xenomics | $50,000 |
| August 22, 2005 | iMedia | $50,000 |
| September 19, 2005 | Central Lighting | $50,000 |
| Total | | $350,000 |

22.     In recommending that Mr. Miltenberg participate in these private placement transactions, Mr. Gross told Mr. Miltenberg not only that these were cutting edge companies with unique technologies and products that were poised to make it big, but that Axiom/had close relationships with the management of the companies and that their financial fundamentals were sound.

23.     The private placements were not suitable for Mr. Miltenberg because they were speculative and did not provide safety for the principal invested. The private placements did not provide liquidity or accessibility; did not generate income; and, had high front-end charges.

24.     In addition to the fact that they were unsuitable, Mr. Gross failed to tell Mr. Miltenberg:

a)     That the companies had at least 90 days to cause the SEC to declare the registration statements for the restricted shares effective, thus enabling them to be sold on the open market. This was in direct contradiction to Mr. Gross' assurances that Mr. Miltenberg would be able to sell his purchases in as little as 60 days.

b)     That there was no guarantee that the registrations would ever become effective, thus locking in Mr. Miltenberg's investments for an even longer period.

c)     That there was no guarantee that, even if the shares were registered, Mr. Miltenberg would be able to sell them at the price he paid for them.

d)     That Axiom was to receive up to 10% of the proceeds from the transactions that

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

Mr. Miltenberg was participating in, along with additional cash and other consideration.

25.     Mr. Miltenberg relied on Mr. Gross to advise him on the purchases he was recommending. Had Mr. Miltenberg known the full extent of the risks involved, and the specific negative factors Mr. Gross failed to tell him about, he would not have invested in these transactions.

26.     Mr. Gross also recommended and advised Mr. Miltenberg to invest approximately $75,000 in Vistula Communications (the "**Vistula Stock**").

27.     At that time, Vistula traded on the over-the-counter bulletin board and not on any recognized exchange. When Mr. Miltenberg purchased the stock, the shares were priced between $1.50 and $1.80.

28.     For almost a year, Mr. Gross assured Mr. Miltenberg that the stock was "moments away" from trading between $3 and $5 per share. The stock is currently trading for less than $0.50 per share.[1]

**False Profits**

29.     Shortly after Mr. Miltenberg began investing Mr. Gross; Mr. Gross began telling Mr. Miltenberg that he was making money. For example, on or around September 7, 2005, at a meeting with Mr. Miltenberg, Mr. Gross told Mr. Miltenberg that the investments were already showing gains of $330,000.

30.     The account statement itself does not show a "market value" for the restricted shares owned by Mr. Miltenberg, yet Mr. Gross attributed a value to them, apparently based on the quoted prices for the common shares of the companies.

31.     In the November 2005 meeting, Mr. Gross also told Mr. Miltenberg that:

---

[1] On instructions from his prior counsel, Mr. Miltenberg liquidated his Vistula holdings, recovering approximately $30,000 of his $75,000 investment in the company.

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

a.   iCurie would be trading in the $3-5 dollar range before December 2005;

b.   Mr. Miltenberg would be able to sell his Xenomics holdings in January or February, 2006 for around $4.70 per share;

c.   Mr. Miltenberg would be able to sell his Central Lighting investment in February or March 2006 for between $5.00 and $6.00 per share; and,

d.   That iMedia would become tradeable in January or February, 2006.

32.   These statements were without foundation. Mr. Gross could not have known at that time whether or not the restricted shares held by Mr. Miltenberg were to be tradeable. While Mr. Gross might have hoped that his predictions would come true, his specific promises of future events were false and misleading and specifically prohibited by the NASD. It is a violation of NASD Conduct Rule 2110 to make a price prediction to a customer without a reasonable basis for doing so.

33.   Mr. Gross made the predictions with no reasonable basis and doing so was reckless, deceptive and fraudulent. By recommending these investments to Mr. Miltenberg, Mr. Gross implied that he had an adequate basis for making such recommendation.

**False Information**

34.   On numerous occasions throughout the fall of 2005, Mr. Miltenberg asked Mr. Gross what was happening with his investments. Each time, Mr. Gross reassured Mr. Miltenberg that everything was proceeding towards a resolution (in Mr. Gross' words, they were "moments away") and that he would be able to sell the securities in each of the companies.

35.   Mr. Gross reassured Mr. Miltenberg that Gross and his colleagues at Axiom were in regular contact with the management of the companies that Mr. Miltenberg had invested in and were told that business operations were proceeding well and that any delay in the registration of the shares (or other event to enable the shares to be traded freely) was the result of issues

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

related to regulatory findings and not as a result of some operational difficulties that the companies were having.

36.     Throughout the Spring of 2006, Mr. Miltenberg and Mr. Gross exchanged e-mails regarding the timing of the registration of Mr. Miltenberg's shares that would, said Gross, enable him to liquidate his investments:

a.  On March 29, 2006, Mr. Miltenberg wrote Mr. Gross: "I have some very real financial constraints due to the fact that these deals have taken much longer to come to fruition ... Had I known that it was going to be this long (and longer), I would have planed and invested differently.   *I think I have been pretty clear about this all along*." (emphasis added).

b.  On April 5, 2006, in response to an e-mail from Mr. Miltenberg, Mr. Gross wrote: "I have no reason to worry because all are near closure on positive (sic) news. I am very comfortable with the postions. (sic)"

c.  On April 24, 2006, in response to a question about iCurie, Mr. Gross wrote: "news will be coming positive in the next couple of weeks."

d.  Three weeks later, on May 15, 2006, Mr. Gross wrote "icurrie (sic) is going to do just fine contracts will be soon (sic)"

e.  On May 16, 2006, Mr. Gross wrote "All is well, fundamentals look very good for all the stocks. Stay positive."

f.  On May 23, 2006, Mr. Gross wrote: "Each of the cos will over the next 30-45 days I feel will look a lot better as to price (sic)."

g.  On May 24, 2006, in response to a question from Mr. Miltenberg regarding the time frame for the registration of Mr. Miltenberg's shares in Central Lighting, Mr. Gross e-mailed Mr. Miltenberg and expressly told him "Approx. 30 to 60 days."

**Final Agreement**

37.     On or around June 14, 2006, Mr. Miltenberg met Mr. Gross in New York. Mr. Miltenberg again explained his extreme displeasure and frustration at the course of events. He told Mr. Gross that his inability to liquidate the holdings was causing financial strains.

38.     In response, Mr. Gross told Mr. Miltenberg that he expected the value of Mr.

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

Miltenberg's portfolio would be approximately $740,000 by the end of September 30, 2006. Mr. Gross went on to promise Mr. Miltenberg that that he would arrange for the liquidation of Mr. Miltenberg's holdings by that date, even if Mr. Gross had to pay Mr. Miltenberg from his own pocket. Mr. Gross confirmed the agreement in writing by providing Mr. Miltenberg with a copy of his notes of the meeting which read, "9/30/06-Settle this no more time."

39.     Mr. Gross thereafter confirmed his agreement to liquidate Mr. Miltenberg's holdings on several other occasions:

    a.   On July 27, 2006, in response to an e-mail from Mr. Miltenberg referring to the September 30th date, Mr. Gross's assistant, on his instructions, wrote: "Just remember that we made a deal. I'll keep my part and you keep your part and stop worrying."

    b.   On August 17, 2006, Mr. Miltenberg e-mailed Mr. Gross and said "we are less then 45 days away from September 30, 2006; (sic) since the time we met in June at The Regency and made our *deal*... Please explain to me, specifically, how you intend to keep your end of the deal: that by September 30, 2006, at a minimum, my account would be even." (emphasis in original). In response, Mr. Gross wrote "I stand by our conversation we had had at the Regency in New York."

40.     Despite the express promise made by Mr. Gross, September 30, 2006 came and went, and Mr. Miltenberg was unable to sell his holdings.

### COUNT I – 11 U.S.C. Section 11 U.S.C. Section 523(a)(2)(A)

41.     Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42.     This is an action to deny the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A).

43.     At all times relevant, the Debtor acted in a fiduciary and confidential capacity in his professional relationship with Plaintiff.

44.     11 U.S.C. 523(a)(2)(A) provides in pertinent part, that a discharge will not be

granted to an individual debtor from any debt that is for money, property or services obtained by false pretenses, a false representation or fraud.

45.    In the instant case, Mr. Gross is indebted to Mr. Miltenberg for damages incurred due to his false pretenses, false representations and/or fraud.

46.    Specifically, Mr. Miltenberg made the following false representations (or failed to represent), with the intent to induce Mr. Miltenberg to invest with him:

    a.  Mr. Gross represented to Plaintiff that he had thoroughly researched and investigated the Private Placements and Vistula Communications, including their sponsors and promoters, and had ascertained that they had excellent credentials and were entirely reputable;

    b.  Mr. Gross failed to tell Mr. Miltenberg that these transactions were suitable for investors of adequate financial means who have no need for liquidity;

    c.  Mr. Gross failed to tell Mr. Miltenberg that he might not be able to liquidate the investment in an emergency;

    d.  Mr. Gross failed to tell Mr. Miltenberg that the ability to transfer the shares (including "crossing" the shares with another investor, as suggested by Mr. Gross) was extremely limited;

    e.  Mr. Gross failed to tell Mr. Miltenberg that there was no guarantee as to when, if ever, the stock received in these transactions could be sold;

    f.  Mr. Gross failed to tell Mr. Miltenberg that he could lose his entire investment;

    g.  Mr. Gross failed to tell Mr. Miltenberg that private stock offerings like these were usually used as a last resort by companies with few alternatives to raise revenue;

    h.  Mr. Gross failed to tell Mr. Miltenberg of the materially adverse financial

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

information about the companies that he knew; and,

     i.   Mr. Gross failed to tell Mr. Miltenberg that Axiom earned a substantially higher commission when their customers bought stock in a private transaction than when they purchased stock in the open markets.

47.    As set forth in the general allegations above, Mr. Gross obtained funds from Mr. Miltenberg through false pretenses, false representations, and actual fraud.

48.    The foregoing representations and omissions were false, and known by Mr. Gross to be false when made by Mr. Gross.

49.    The foregoing misrepresentations and omissions were material to Mr. Miltenberg's decision to liquidate his Raymond James account and purchase the Private Placements and Vistula Communications shares.

50.    Mr. Gross made the foregoing representations and omissions with the intent that Mr. Miltenberg would rely upon them, and Mr. Miltenberg did, in fact, reasonably rely on Mr. Gross' representations and omissions.

51.    But for Mr. Gross' misrepresentations, omissions and fraudulent misconduct while acting as Mr. Miltenberg's fiduciary, Mr. Miltenberg would not have taken his entire pension in a lump sum and purchased the Private Placements and Vistula Communications shares.

52.    Upon information and belief, Mr. Gross benefited from Mr. Miltenberg's purchase of the Private Placement and Vistula stock because the money invested was used to pay expenses (salaries, creditors, operating expenses, etc.) of Axiom, of which Mr. Gross may have received.

53.    Plaintiff is entitled to a non-dischargeable judgment for fraud, misrepresentation,

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

and breach of fiduciary duty in the amount of $395,000.00 together with punitive damages, costs, attorney's fees, and interest at the judgment rate.

WHEREFORE, based upon the foregoing, Andrew Miltenberg requests that this Court enter a non-dischargeable judgment against Mr. Gross, in favor of Mr. Miltenberg, in the amount of $395,000.00 together with punitive damages, costs, attorney's fees, and interest at the judgment rate, pursuant to 11 U.S.C. Section 523(a)(2)(A), and any such further relief as this Court deems equitable and proper.

### COUNT II – 11 U.S.C. Section 523(a)(4)

54.    Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 40 above.

55.    This is an action for dischargeability of debt pursuant to 11 U.S.C. Section 523(a)(4).

56.    11 U.S.C.523(a)(4) provides in pertinent part, that a discharge will not be granted to an individual debtor from any debt that is for fraud or defalcation while acting in a fiduciary capacity.

57.    At all times relevant, the Debtor acted in a fiduciary and confidential capacity in his professional relationship with Plaintiff.

58.    In connection with his sale to Mr. Miltenberg of the Private Placements and Vistula Communications, Mr. Gross employed false representations and fraud to procure their purchase by making the following material omissions, as follows:

a.    Mr. Gross represented to Plaintiff that he had thoroughly researched and investigated the Private Placements and Vistula Communications, including their sponsors and promoters, and had ascertained that they had excellent credentials

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

and were entirely reputable;

b.  Mr. Gross failed to tell Mr. Miltenberg that these transactions were suitable for investors of adequate financial means who have <u>no need for liquidity</u>;

c.  Mr. Gross failed to tell Mr. Miltenberg that he might not be able to liquidate the investment in an <u>emergency</u>;

d.  Mr. Gross failed to tell Mr. Miltenberg that the ability to <u>transfer</u> the shares (including "crossing" the shares with another investor, as suggested by Mr. Gross) was extremely limited;

e.  Mr. Gross failed to tell Mr. Miltenberg that there was no guarantee as to when, if ever, the stock received in these transactions could be <u>sold</u>;

f.  Mr. Gross failed to tell Mr. Miltenberg that he could lose his entire investment;

g.  Mr. Gross failed to tell Mr. Miltenberg that private stock offerings like these were usually used as a <u>last resort</u> by companies with few alternatives to raise revenue;

h.  Mr. Gross failed to tell Mr. Miltenberg of the materially adverse financial information about the companies that he knew; and,

i.  Mr. Gross failed to tell Mr. Miltenberg that Axiom earned a substantially higher commission when their customers bought stock in a private transaction than when they purchased stock in the open markets.

59.     As set forth in the general allegations above, Mr. Gross obtained funds from Mr. Miltenberg through fraud or defalcation while acting in a fiduciary capacity.

60.     The foregoing representations and omissions were false, and known by Mr. Gross to be false when made by Mr. Gross.

61.     The foregoing misrepresentations were material to Mr. Miltenberg's decision to

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

liquidate his Raymond James account and purchase the Private Placements and Vistula Communications shares.

62.    Mr. Gross made the foregoing representations with the intent that Mr. Miltenberg would rely upon them, and Mr. Miltenberg did, in fact, reasonably rely on Mr. Gross' representations.

63.    But for Mr. Gross' misrepresentations and fraudulent misconduct while acting as Mr. Miltenberg's fiduciary, Mr. Miltenberg would not have taken his entire pension in a lump sum and purchased the Private Placements and Vistula Communications shares.

64.    Plaintiff is entitled to a judgment for fraud, misrepresentation, and breach of fiduciary duty in the amount of $395,000.00 together with punitive damages, costs, and interest at the judgment rate.

WHEREFORE, based upon the foregoing, Andrew Miltenberg requests that this Court enter a non-dischargeable judgment against Mr. Gross, in favor of Mr. Miltenberg, for $395,000.00 together with punitive damages, costs and interest at the judgment rate pursuant to 11 U.S.C. Section 523(a)(4), and any such further relief as this Court deems equitable and proper.

## COUNT III – 11 U.S.C. Section 523(a)(19)

65.    Plaintiff adopts and incorporates the allegations set forth in paragraphs 1 through 40 above.

66.    This is an action for dischargeability of debt pursuant to 11 U.S.C. Section 523(a)(19).

67.    11 U.S.C. §523(a)(19)(A) and (B) provide in pertinent part that a discharge will not be granted to an individual debtor from any debt that is for "the violation of…any State

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

securities laws, or any regulation or order issued under such…State securities law; or common law fraud, deceit or manipulation in connection with the purchase or sale of any security; and results from—

> (i)   any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
> (ii)   any settlement agreement entered into by the debtor; or
>
> (iii)   any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

68.   In the sale of the Private Placement and Vistula Stock to Mr. Miltenberg, Mr. Gross participated in a transaction that was in violation of at least one state securities law, violated federal securities law, or was accomplished by common law fraud, deceit, or manipulation.

69.   Section 517.301 of the Florida Statutes, provides in pertinent part:

1) It is unlawful and a violation of the provisions of this chapter for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

**or**

3. To engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon a person.

70.      §240.10b-5 of the Code of Federal Regulations provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

 **or**

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

71.      New York McKinney's General Business Law § 339-a and §352-c provide in

pertinent part:

Any person, who, with intent to deceive, makes, issues or publishes, or causes to be made, issued or published, any statement or advertisement as to the value or as to facts affecting the value of the stocks, bonds or other evidences of debt of a corporation, company or association, or as to the financial condition or facts affecting the financial condition of any corporation, company or association which has issued, is issuing or is about to issue stocks, bonds or other evidences of debt, and who knows, or has reasonable ground to believe that any material representation, prediction or promise made in such statement or advertisement is false, is guilty of a misdemeanor.

McKinney's General Business Law §339-a

1.   It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:

(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;

(b) Any promise or representation as to the future which is beyond

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

reasonable expectation or unwarranted by existing circumstances;

(c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made;

where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in section three hundred fifty-two of this article, regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.

2. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to engage in any artifice, agreement, device or scheme to obtain money, profit or property by any of the means prohibited by this section.

McKinney's General Business Law § 352-c

72.    The sale of the Private Placements and the Vistula Stock to Mr. Miltenberg by Mr. Gross was unlawful under Florida, New York, and Federal Securities Regulations, because, as alleged herein above: (i) untrue statements were made with regard to material facts or material facts were omitted which were necessary to render statements not misleading; (ii) the transactions operated as a fraud or deceit upon Mr. Miltenberg; (iii) material facts were knowingly and willfully falsified, concealed or covered up; and/or (iv) false, fictitious or fraudulent statements or representations were knowingly and willingly made.

73.    In connection with his sale to Mr. Miltenberg of the Private Placements and Vistula Communications, Mr. Gross employed false representations and fraud to procure their purchase by making the following material omissions, as follows:

a.  Mr. Gross represented to Plaintiff that he had thoroughly researched and investigated the Private Placements and Vistula Communications, including their

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431 561.443.0800

sponsors and promoters, and had ascertained that they had excellent credentials and were entirely reputable;

b.   Mr. Gross failed to tell Mr. Miltenberg that these transactions were suitable for investors of adequate financial means who have <u>no need for liquidity</u>;

c.   Mr. Gross failed to tell Mr. Miltenberg that he might not be able to liquidate the investment in an <u>emergency</u>;

d.   Mr. Gross failed to tell Mr. Miltenberg that the ability to <u>transfer</u> the shares (including "crossing" the shares with another investor, as suggested by Mr. Gross) was extremely limited;

e.   Mr. Gross failed to tell Mr. Miltenberg that there was no guarantee as to when, if ever, the stock received in these transactions could be <u>sold</u>;

f.   Mr. Gross failed to tell Mr. Miltenberg that he could lose his entire investment;

g.   Mr. Gross failed to tell Mr. Miltenberg that private stock offerings like these were usually used as a <u>last resort</u> by companies with few alternatives to raise revenue;

h.   Mr. Gross failed to tell Mr. Miltenberg of the materially adverse financial information about the companies that he knew; and,

i.   Mr. Gross failed to tell Mr. Miltenberg that Axiom earned a substantially higher commission when their customers bought stock in a private transaction than when they purchased stock in the open markets.

74.   As set forth in the general allegations above, Mr. Gross obtained funds from Mr. Miltenberg through fraud or defalcation while acting in a fiduciary capacity.

75.   The foregoing misrepresentations were material to Mr. Miltenberg's decision to liquidate his Raymond James account and purchase the Private Placements and Vistula

KLUGER, PERETZ, KAPLAN & BERLIN, P.L., 2385 NW EXECUTIVE CENTER DRIVE, SUITE 300, BOCA RATON, FL 33431  561.443.0800

Communications shares.

76.    Mr. Gross made the foregoing representations with the intent that Mr. Miltenberg would rely upon them, and Mr. Miltenberg did, in fact, reasonably rely on Mr. Gross' representations.

77.    But for Mr. Gross' misrepresentations and fraudulent misconduct while acting as Mr. Miltenberg's fiduciary, Mr. Miltenberg would not have taken his entire pension in a lump sum and purchased the Private Placements and Vistula Communications shares.

78.    Plaintiff is entitled to a judgment for fraud, misrepresentation, and breach of fiduciary duty in the amount of $395,000.00 together with punitive damages, costs, attorney's fees, and interest at the judgment rate.

WHEREFORE, based upon the foregoing, Andrew Miltenberg requests that the foregoing obligation be deemed non-dischargeable pursuant to 11 U.S.C. Section 523(a)(19), and any such further relief as this Court deems equitable and proper.

Dated: February  18, 2008

**KLUGER, PERETZ, KAPLAN & BERLIN, P.L.**
Attorneys for Andrew Miltenberg
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Direct Line: 561-443-0801
Facsimile: 561-998-0047


By:_____/s/Eyal Berger_____
        Bradley S. Shraiberg
        Fla. Bar No.: 121622
        bshraiberg@kpkb.com
        Eyal Berger
        Fla Bar No. 11069
        eberger@kpkb.com